UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ENIGMA HOLDINGS, INC., et al., § § Plaintiffs, § § v. § § GEMPLUS INTERNATIONAL S.A., et al., § § Defendants. § | CIVIL ACTION NO. 3: 05-CV-1168-B ECF |

## MEMORANDUM ORDER

In this action by Enigma Holdings, Inc. ("Enigma") and Ebun Limited ("Ebun") (together, "Plaintiffs"), Defendants Texas Pacific Group,[1] TPG Giant LLC, TPG Partners III, L.P., T3 Partners, L.P. (Collectively, the "TPG Defendants"), and David Bonderman ("Bonderman") filed their Motion to Dismiss Plaintiffs' First Amended Complaint **(doc. 48)** pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion as follows.

## I. BACKGROUND FACTS

Gemplus is an international technology company incorporated in Luxembourg and with headquarters in France that manufactures "smart cards," or credit cards embedded with computer chips. (First Amended Complaint ("FAC") ¶ 1) Texas Pacific Group is a private equity investment firm headquartered in Texas with offices in California, London, and other places, founded by

---

[1] Defendants argue in a footnote that "Texas Pacific Group" is not a cognizable legal entity and lacks the capacity to be sued. Because the parties have not fully briefed the matter and the Court disposes of the Motion to Dismiss on other grounds, the Court does not address this argument. The issue may be raised again after repleading of the First Amended Complaint.

Bonderman, which operates through a series of partnerships and affiliates, including TPG Giant LLC, TPG Partners III, L.P., and T3 Partners, L.P. (*Id.* at ¶ 11) In 1999 TPG Defendants and Bonderman discussed with Gemplus representatives their potential investment in Gemplus, which was finalized in February 2000. (*Id.* at ¶¶ 19-23) As a condition of their investment, Defendants entered into a Shareholders' Agreement with Marc Lassus, founder of Gemplus, and the Quandt family, a significant shareholder. (*Id.* at ¶ 24)

The Shareholders' Agreement allowed TPG Defendants to control greater than fifty percent of the shares of Gemplus, although they purchased only about 26% of its shares. (*Id.* at ¶¶ 24,26) The terms of the Shareholders' Agreement required the parties to keep its contents confidential, and TPG representatives instructed Lassus not to mention the agreement. (FAC ¶ 29) Defendants gained further control of Gemplus by placing TPG affiliates into the Gemplus management structure and other important positions. (*Id.* at ¶ 20, 38, 43, 45, 47) In addition, through a series of moves TPG Defendants appointed directors to five of the eight seats of the Board of Gemplus. (*Id.* at ¶ 41)

At the heart of Plaintiffs' allegations are that Defendants, through their control over Gemplus, made several misrepresentations or omissions, including that Defendants controlled Gemplus, Gemplus executives received €144 million in unsecured loans, Gemplus entered into transactions in which TPG had an undisclosed majority ownership interest, and Gemplus's financial prospects were overstated. (Pls.' Opp'n to Mot. to Dismiss p. 1)

Plaintiffs Enigma and Ebun are companies incorporated and with their principal place of business in the Bahamas. (*Id.* at ¶¶ 9, 10) Except for Ebun's 2001 purchases of American Depositary Shares in dollars, Enigma and Ebun purchased all of their Gemplus shares in euros in 2000 and 2001. (*See* FAC at ¶¶ 56-60, 72-82) Plaintiffs allege that if they had known of Defendants' domination and

control of Gemplus they would not have made their purchases.  (*Id.* at ¶¶ 54, 140-144)

On October 8, 2002, Plaintiffs' representative filed an action against Defendants and the Quandt family in the Commission de Surveillance du Secteur Financier ("CSSF"), a Luxembourg administrative agency, alleging that they were voting in concert to control Gemplus. Defendants and the Quandts denied the allegations and the existence of the Shareholders' Agreement.   (*Id.* at ¶ 121) The CSSF adopted the position of Defendants and the Quandts.  (*Id.* at ¶ 122)

In February 2003, the Autorite des Marches Financiers ("AMF"), a French regulatory authority, began an investigation of Gemplus, which, in a report issued July 9, 2004, determined that the TPG Defendants controlled Gemplus and noted the existence of the Shareholders' Agreement. (*Id.* at ¶ 124-26)

## II.  PROCEDURAL HISTORY

Plaintiffs filed their Original Complaint on June 8, 2005 (doc. 1).  TPG Defendants and Bonderman filed a Motion to Dismiss the Original Complaint on September 28, 2005 (doc. 32). Defendant Gemplus filed its Motion to Dismiss the Original Complaint on September 29, 2005 (doc. 36).  After Defendants moved to dismiss the initial complaint, Plaintiffs amended as of right. Plaintiffs filed their First Amended Complaint ("FAC") on November 23, 2005 (doc. 45), dismissing Defendant Gemplus from the case.  In the FAC, Plaintiffs' assert federal securities fraud claims against  TPG Defendants and Bonderman under Sections 10(b)[2] and 20(a)[3] of the Securities and Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5.[4] TPG Defendants and

---

[2] 15 U.S.C. § 78j.

[3] 15 U.S.C. § 78t.

[4] 17 C.F.R. § 240.10b-5.

Bonderman next filed the instant Motion to Dismiss the FAC (doc. 48). The Court then denied as moot Defendants Motion to Dismiss the Original Complaint (doc. 51).

Defendants' assert several grounds for the instant Motion, including lack of subject matter jurisdiction, statute of limitations, failure to plead with particularity, failure to plead sufficient facts to determine choice of law, and failure to state a claim upon which relief can be granted. Essentially, Defendants' argue that insufficient conduct occurred in the United States for subject matter jurisdiction over the federal claims and Plaintiffs FAC does not allege sufficient facts to determine choice of law for the state claims. Furthermore, they assert the statute of limitations bars the federal claims because publicly-filed documents and press reports placed Plaintiffs on notice of their claims and Plaintiffs previously filed a similar complaint. Additionally, Defendants argue that Plaintiffs' do not allege facts with particularity, fail to allege facts essential to their claims, and state claims that do not exist under Texas or Luxembourg law. Plaintiffs oppose this Motion arguing that several substantial acts occurred in Texas and the United States, the statute of limitations should not apply because Defendants' concealed their control over Gemplus, and that they pled sufficient facts for all their claims. The Court has reviewed the parties' arguments and authority, and now turns to the merits of its decision.

### III.  ANALYSIS

*A.     Subject Matter Jurisdiction*

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' federal securities law claims because Plaintiffs have not pled that conduct in the United States directly caused their loss. In evaluating the Defendants' motion to dismiss for lack of subject matter jurisdiction, the Court may base its disposition on "(1) the complaint alone; (2) the complaint

supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). As the party claiming subject matter jurisdiction, Plaintiffs have the burden of proving it exists. *Peoples Nat'l Bank v. Office of Comptroller of Currency of United States*, 362 F.3d 333,336 (5th Cir. 2004). "[T]he facts showing the existence of jurisdiction must be affirmatively alleged in the complaint." *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1177 (5th Cir. 1984).

With one small exception not relevant here, "the Exchange Act does nothing to address the circumstances under which American courts have subject matter jurisdiction to hear suits involving foreign transactions." *Robinson*, 117 F.3d at 904-905. The courts have addressed this problem by creating two tests for subject matter jurisdiction, the "conduct" test and the "effects" test. The conduct test "asks whether the fraudulent conduct that forms the alleged violation occurred in the United States." *Id.* at 905. The effects test "asks whether conduct outside the United States has had a substantial adverse effect on American investors or securities markets." *Id.* Because the conduct test is dispositive, the Court does not address the effects test.

Although the circuits are divided as to the kind of activities needed to satisfy the conduct test, all agree that Congress did not intend "the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners." *Id.* (citing *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1017 (2d Cir. 1975). Congress also did not intend the securities statutes to protect "the victims of any fraud that somehow touches the United States." *Robinson*, 117 F.3d at 906. Thus, under the conduct test, "acts or culpable failures to act within the United States" must have "directly caused the plaintiff's loss." *Id.* at 905. Subject matter jurisdiction exists only when "substantial acts in furtherance of the fraud were committed in the United States." *Id.* (citing

- 5 -

*Psimenos v. E.F. Hutton & Co.*, 722 F.2d 1041, 1045 (2d Cir. 1983). "Merely preparatory" activities, in and of themselves, will not support jurisdiction. *Id.*

In discussing the conduct test, the Fifth Circuit recognized subject matter jurisdiction where the fraudulent scheme was alleged to be directed and controlled from the United States and one key event occurred in the United States, even though most of the material conduct occurred in England. *Robinson*, 117 F.3d at 907. Specifically, a "lone mailing" of a letter from the United States instructing a second valuation of a company was sufficient grounds for subject matter jurisdiction where it was represented earlier that only one valuation would take place. *Id.*

Review of Plaintiffs' First Amended Complaint reveals sufficient grounds for subject matter jurisdiction. Similar to *Robinson*, here Plaintiffs' allege that Defendants' masterminded and directed their control scheme from the United States. (FAC ¶¶ 4, 14) Plaintiffs' also allege several specific key acts occurred in the United States. The Plaintiffs' assert the following conduct supports subject matter jurisdiction:

1. Gemplus representatives met with Bonderman at his home in Aspen, Colorado, where they reached agreement on the terms and conditions of TPG's investment in Gemplus. (*Id.* ¶ 22)

2. TPG personnel took over Gemplus's search for a new CEO and demanded Gemplus use a California recruiting firm. (*Id.* ¶ 47)

3. TPG representatives conducted the search and were present for interviews in California from which the new CEO, Antonio Perez, was selected without input from Gemplus. (*Id.* ¶ 48)

4. TPG was involved in negotiating the employment agreement between Gemplus and

> Perez, which was drafted by TPG's counsel in New York.  (*Id.* ¶ 48)

5. In connection with Enigma's purchases, TPG retained Allan Green and instructed him not to disclose facts related to TPG's control of Gemplus to Enigma representatives.  (*Id.* ¶ 57)

6. Defendants directed the drafting of Gemplus' Form F-1 Registration Statement, together with their attorneys at Cleary Gottlieb in its New York Office.  (*Id.* ¶ 66)

7. Ebun relied on the Registration Statement at the time of its purchases.  (*Id.* ¶ 141)

Thus, Plaintiffs' allege several substantial acts in furtherance of the control scheme occurred in the United States.  Plaintiffs' allegations – that the terms and conditions of the control scheme were reached in Colorado, the scheme was masterminded and directed from the United States, and the Defendants' implemented their control by directing concealment by Green and the drafting of the Registration Statement – are sufficient to show that key events in forming, directing, and implementing the alleged scheme to defraud occurred in the United States.  Because the conduct alleged by Plaintiffs directly caused Plaintiffs' loss, Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

## B.   *Legal Standard*

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).  In deciding a motion to dismiss, the Court must construe the FAC in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor. *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  However, the Court may not rely on "conclusional allegations or legal conclusions disguised as factual allegations." *Id.*  The Court will next address Plaintiffs federal securities law claims.

C.   *Federal Securities Law Claims*

Plaintiffs allege Defendants violated § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5) through their fraudulent concealment of their control over Gemplus.  To state a securities fraud claim under § 10(b) and Rule 10b-5, Plaintiffs must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which Plaintiffs relied; and (5) that proximately caused Plaintiffs' injuries.  *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).

Defendants raise several arguments in response to Plaintiffs federal securities claims, primarily based on the statute of limitations and pleading deficiencies. Because the Court finds them dispositive, the Court will only address Defendants' arguments regarding the statute of limitations for the federal securities claims.

1.   Statute of Limitations

Defendants argue that all Plaintiffs' federal securities law claims are barred by the applicable statute of limitations because, among other reasons, Plaintiffs' representative filed a similar complaint in Luxembourg.  Whether Plaintiffs had sufficient facts for inquiry notice of their claims is "often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)."  *LC Capital Partners, L.P. v. Frontier Ins. Group, Inc.*, 318 F.3d 148, 156 (2nd Cir. 2003) (quoting *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367 (7th Cir. 1997)).  However, "[a] motion to dismiss for failure to state a claim pursuant to [Rule] 12(b)(6) is a valid means to raise a limitations defense if the defense clearly appears on the face of the complaint."  *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987) (citing *Kaiser Aluminum's Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)); 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357

(3rd ed. 2006) ("A complaint showing that the governing statute of limitations has run . . . is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

Private claims involving "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" are governed by a two-year statute of limitations from the time of discovery of the alleged fraud. 28 U.S.C. § 1658. The statute of limitations begins to run when the Plaintiffs discover, or in the exercise of reasonable diligence should discover, the alleged fraudulent conduct. *Jenson v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988). Plaintiffs thus have an affirmative duty of diligence and are not entitled to a "leisurely discovery of the full details of the alleged scheme." *Id.* at 607. Defendants' acts of concealment do not relieve plaintiffs of their duty to exercise reasonable diligence to discover the fraud. *Id.* "Concealment by the defendant[s] is only a factor to be considered in determining when the plaintiff[s] should have discovered the fraud." *Id.* Equitable estoppel applies where "the defendant's conduct . . . reasonably induced the plaintiff not to file suit within the limitations period." *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 310 F. Supp. 2d 819, 856 (S.D. Tex. 2004) (quoting *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002)).

Plaintiffs admit in their complaint that their representative filed a similar action against TPG and the Quandt family in the Luxembourg CSSF, alleging that TPG and the Quandts controlled Gemplus by voting in concert without adequate disclosure. (FAC ¶ 121) Plaintiffs further allege that in that proceeding TPG denied the allegations and the existence of the Shareholders' Agreement. (FAC ¶¶ 121-123)

Since Plaintiffs filed a substantially similar action in Luxemburg on October 8, 2002, more

than two years prior to the Plaintiffs' present claims, from the face of the FAC the Plaintiffs had actual or constructive knowledge of sufficient facts to put them on notice of their claims outside the statute of limitations period. (*See* FAC ¶¶ 121-123)

Plaintiffs argue that since they inquired into the fraud in the Luxemburg proceedings and Defendants denied the allegations, equitable estoppel applies and they cannot be charged with constructive knowledge. (Defs. Br. pp. 19-20) However, as here, mere denial of liability is an insufficient basis for equitable estoppel. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 425 (S.D.N.Y. 2003) (finding claims barred by statute of limitations on motion to dismiss); *Stephen v. Goldinger*, 325 F.3d 874, 877 (7th Cir. 2003); *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002); *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-219 (4th Cir. 1987). Because equitable estoppel only applies where Plaintiffs were *reasonably* induced not to file suit, from the face of the FAC Plaintiffs § 10(b) and Rule 10b-5 federal securities claims are barred by the statute of limitations.

2.  20(a) Claims

Defendants also move to dismiss Plaintiffs' Section 20(a) claims.[5] Control person liability under Section 20(a) is derivative of an underlying securities act claim. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 n. 57 (5th Cir. 2002). Plaintiffs' Section 20(a) claims are subject to the same statute of limitations as their underlying Section 10(b) claims. *See* 28 U.S.C. § 1658.

---

[5]Section 20(a) provides in relevant part:

Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

Therefore, because the Court dismisses Plaintiffs' Section 10(b) claims, the Court also dismisses their Section 20(a) claims at this time.

### D.     *State Law Claims*

In addition to the federal securities claims, Plaintiffs make six state law claims against the Defendants based on diversity jurisdiction. Plaintiffs make four fraud-based claims, including common law fraud, statutory fraud, civil conspiracy to commit fraud, and aiding and abetting fraud. Plaintiffs also make two corporate governance claims for breach of fiduciary duty and abuse of control. Defendants make several arguments that these claims should be dismissed, including failure to plead facts to determine choice of law, failure to state a viable claim, and failure to plead with particularity. Because the Court finds them dispositive at this time, the Court will only address Defendants arguments regarding choice of law and failure to state a viable claim.

#### 1.     Fraud-based Claims

Defendants argue that Plaintiffs fail to plead facts necessary to determine choice of law for the fraud-based claims. The Court agrees. Choice of law is a threshold inquiry in diversity jurisdiction cases. *Faloona by Fredrickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) ("At the threshold in this diversity jurisdiction case, we must determine applicable law by applying Texas choice-of-law rubrics.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). When sitting in diversity jurisdiction, a federal court must apply the choice of law rules of the forum state, in this case Texas. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Klaxon Co.*, 313 U.S. at 496).

Texas courts decide choice of law issues by using the Restatement's "most significant relationship" test. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003)

(citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). Specifically, Restatement (Second) of Conflict of Laws § 148(2) applies in fraud and misrepresentation claims. A six factor test determines which state has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendants made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2) (1971); *Benchmark Elecs., Inc.*, 343 F.3d at 727 n. 4; *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 358 (Tex.App.-Dallas 2004). If two of the above contacts, other than defendant's domicil, state of incorporation or place of business, are located wholly in a single state, then that state's law will usually govern. Restatement (Second) of Conflict of Laws § 148 cmt. j (1971); *Grant Thornton LLP*, 133 S.W.3d at 358.

Plaintiffs argue that Texas law should govern their state law claims because Texas is the domicile of the Defendants and they generally allege that the control scheme was masterminded at TPG's headquarters in Texas. (Pls.' Br. p. 41) However, Plaintiffs' alleged facts only cursorily address the place where the defendants made the representations and do not address the place, or places, where the plaintiff acted in reliance upon the defendants' representations or the place where

plaintiffs received the representations.[6]  Therefore, Plaintiffs have not alleged sufficient facts for the Court to determine choice of law for the fraud-based claims.  Because choice of law is a threshold inquiry that must be made before the Court can adequately address the sufficiency of the pleadings, the Court cannot at this time address Defendants' other arguments regarding the fraud-based claims.

   2.   Corporate Governance Claims

Defendants argue that Plaintiffs' breach of fiduciary duty and abuse of control claims should be dismissed because Luxembourg law applies and Luxembourg does not recognize their corporate governance claims.  As stated above, here Texas law governs the choice of law determination.  *R.R. Mgmt. Co.*, 428 F.3d at 222.  Texas has adopted the "internal affairs doctrine" by statute, which specifically controls the choice of law issue.  *See* Tex. Bus. Corp. Act Ann. art. 8.02A; *Hollis v. Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 354 (5th Cir. 1989).  In Texas, "the internal affairs of the foreign corporation, 'including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares,' are governed by the laws of the jurisdiction of incorporation."  *Hollis*, 232 F.3d at 465 (quoting Tex. Bus. Corp. Act Ann. art. 8.02A).

Because Plaintiffs breach of fiduciary duty and abuse of control claims are based on TPG's alleged status as a controlling shareholder and the Defendants' status as minority shareholders and their rights, powers, and duties, these claims will be governed by the law of the jurisdiction of incorporation of Gemplus.  Since Gemplus is incorporated in Luxembourg, Luxembourg law applies

---

[6]The last two factors, the place where a tangible thing which is the subject of the transaction between the parties was situated at the time and the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant, do not currently appear to be relevant to the claims in this case.

to Plaintiffs corporate governance claims.

      *a.*      *Luxembourg Law*

Defendants, as the parties seeking to apply foreign law, have the burden of proving its substance to a reasonable certainty. *See In re Avantel, S.A.*, 343 F.3d 311, 321-22 (5th Cir. 2003). If the parties have failed to prove foreign law, then the Court is entitled to fill in the gaps by looking to its own forum's law. *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 836 (5th Cir. 1993).

Here, Defendants submissions are sufficient to prove Luxembourg law to a reasonable certainty. Defendants submitted as an appendix to their Motion the Declaration of Pierre Schleimer regarding the law of Luxembourg and supporting documents, including Luxembourg court decisions and other legal documents.[7] (Def. App. pp. 132-247) Plaintiffs have not addressed or disputed the accuracy of Defendants submissions.

Under Luxembourg law, there are no causes of action identical to the Plaintiffs claims, but an action in tort could have similar effects. (Def. App. p. 134) To succeed on such an action in tort, the Plaintiffs would have to prove, among other things, that they suffered a harm which is personal, i.e. independent and different from the harm caused to the corporation or the shareholders in general. (Def. App. p. 134, 139, 140, 142, 143-144, 227, 232) Because Plaintiffs have not asserted any harm which is personal, independent, and different from the harm caused to the corporation or

---

[7]The Court can consider the Defendants' submissions regarding the law of Luxembourg without converting this Motion to a motion for summary judgment because the determination of foreign law is treated as a ruling on a question of law. *See* FED. R. CIV. P. 44.1 ("The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law."); *Haywin Textile Prods., Inc. v. Int'l Fin. Inv. & Comm. Bank Ltd.*, 152 F. Supp. 2d 409, 411 (S.D.N.Y. 2001).

shareholders in general, the Court finds the Plaintiffs have failed to state a claim for breach of fiduciary duty or abuse of control.

## IV. CONCLUSION

In view of the consequences of dismissal on the pleadings and the preference to decide cases on the merits rather than on the sufficiency of pleadings, courts typically give a plaintiff at least one opportunity to cure pleading defects that the court has identified before dismissing the case, unless it is clear that the defect is incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal.  *United States ex rel. Coppock v. Northrop Grumman Corp.*, No. Civ. A 3:98CV2143D, 2002 WL 1796979, at *15 n.29 (N.D. Tex. Aug. 1, 2002) (Fitzwater, J.).  Because the statute of limitations incurably bars Plaintiffs' federal securities law claims and Plaintiffs do not identify how further pleading could place the claim within the limitations period, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' § 10(b), Rule 10b-5, and 20(a) claims **with prejudice**.  Deficiencies in Plaintiffs' state law claims, on the other hand, are not clearly incurable.  The Court therefore **GRANTS** Defendants' Motion to Dismiss the remainder of Plaintiffs' claims **without prejudice.**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and **DENIES** Defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and **ORDERS** Plaintiffs' Second Amended Complaint must be filed no later than **October 20, 2006.**

**SO ORDERED**.

SIGNED October 5th, 2006.

                                                JANE J. BOYLE
                                                UNITED STATES DISTRICT JUDGE